UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JOEL AARON SUTTON,<br><br>　　　Plaintiff,<br><br>v.<br><br>PENNY MAC LOAN SERVICES, LLC, et al.,<br><br>　　　Defendants. | Case No. 2:23-cv-00064<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:　　The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

This case is one of two actions pending in this district arising out of the foreclosure and sale of pro se Plaintiff Joel Aaron Sutton and his wife Melissa Terry Sutton's home in Dixon Springs, Tennessee. *See* Notice of Removal, *PennyMac Loan Servs., LLC v. Sutton*, Case No. 2:24-cv-00014 (M.D. Tenn. Mar. 4, 2024), ECF No. 1. In this iteration of the dispute, Sutton brings claims against Defendants PennyMac Loan Services, LLC, Mortgage Electronic Registration System, Inc. (MERS), Bank of England, and Rubin Lublin, LLC for violations of mortgage and securities fraud laws, among other claims. (Doc. No. 30.)

The lengthy docket in this action includes Sutton's fourth amended complaint (Doc. No. 30), which Sutton filed with the Court's leave (Doc. No. 29); PennyMac and MERS's motion to dismiss the fourth amended complaint[1] (Doc. No. 33), which Bank of England and Rubin Lublin

---

[1]　　PennyMac and MERS state that their motion to dismiss the fourth amended complaint (Doc. No. 33) "erroneously stated that [it] was being filed on behalf of Penny[M]ac only. However, the memorandum of law submitted contemporaneously with that Motion to Dismiss ([Doc. No.] 34) demonstrates that the Motion to Dismiss was submitted on behalf of both MERS and Penny[M]ac." (Doc. No. 55, PageID# 882.)

seek to join (Doc. Nos. 41, 46); Sutton's motion for summary judgment (Doc. No. 45) and corrected motion for summary judgment (Doc. No. 47); Sutton's motion to join this case with Case No. 2:24-cv-00014 (Doc. No. 50); Sutton's fifth amended complaint (Doc. No. 51), which purports to add Tennessee Secretary of State Tre Hargett and State Farm Fire and Casualty Company as defendants; PennyMac and MERS's motion to strike or dismiss Sutton's fifth amended complaint (Doc. No. 54), which Bank of England, Rubin Lublin, and State Farm seek to join (Doc. Nos. 56, 57, 65); Hargett's answer to the fifth amended complaint (Doc. No. 62); and Sutton's motion for discovery (Doc. No. 70).

For the reasons that follow, the Magistrate Judge will recommend that the Court deny Bank of England's, Rubin Lublin's, and State Farm's motions to join PennyMac and MERS's dispositive motions; grant PennyMac and MERS's motion to strike the fifth amended complaint; deny Sutton's motions to consolidate, for summary judgment, and for discovery, and grant in part PennyMac and MERS's motion to dismiss the fourth amended complaint.

I.     **Background**

A.     **Factual Background**

Sutton alleges that, in 2018, he "was lured into filling out an application for [a] home loan" and "the Bank of England approved a loan up to $350,000.00." (Doc. No. 30, PageID# 532, 533.) On February 12, 2019, Sutton closed on a loan of $162,121.00 from Bank of England and executed a promissory note associated with the loan.[2] (Doc. Nos. 1-2, 30.) Sutton and his wife signed a deed of trust on the same date to secure the loan, conveying the property at 876 Nichols Road in Dixon

---

[2]     Sutton attached a copy of the promissory note as an exhibit to his original complaint (Doc. No. 1-2) and his fourth amended complaint (Doc. No. 30) incorporates the same exhibit by reference.

Springs (the Property) to MERS as nominee for Bank of England and its successors and assigns.[3] (Doc. Nos. 1-2, 30.) The deed of trust was recorded with the Macon County, Tennessee, Register of Deeds. (Doc. No. 1-2.)

MERS assigned the deed of trust to PennyMac on June 2, 2020, via a corporate assignment of deed of trust recorded with the Macon County Register of Deeds. (Doc. No. 1-2.) Sutton signed a loan modification agreement with PennyMac on January 22, 2021, that was filed and recorded with the Smith County, Texas, County Clerk on March 11, 2021. (Doc. No. 34-1.)

Between April and June 2023, Sutton and PennyMac exchanged letters regarding a loan payment dispute. (Doc. No. 18-1.) In a letter from PennyMac to Sutton dated April 26, 2023, PennyMac stated that Sutton had sent a "fraudulent check received on April 17, 2023, addressed to PennyMac . . . , in an attempt to satisfy the . . . loan." (*Id.* at PageID# 310.) PennyMac "respectfully decline[d] the check" and informed Sutton that "the loan remain[ed] due for the April 2023 payment." (*Id.*) PennyMac sent Sutton a similar letter dated May 3, 2023, stating that it received another "fraudulent check [ ] on May 1, 2023, addressed to Mr. David Spector, President and Chief Operations Officer of PennyMac . . . , in an attempt to satisfy the . . . loan." (*Id.* at PageID# 312.) PennyMac "again respectfully decline[d] [the] check" and stated that "the loan remain[ed] due for the April 2023 payment and all subsequent payments." (*Id.*)

Sutton wrote PennyMac a letter dated May 19, 2023, stating that PennyMac "ha[d] been paid with four negotiable instruments that [Sutton] sent to [PennyMac]." (*Id.* at PageID# 280.)

---

[3]     Sutton also attached a copy of the deed of trust as an exhibit to his original complaint (Doc. No. 1-2) and incorporated the exhibit by reference in his fourth amended complaint (Doc. No. 30). Even if Sutton had not filed a copy of the deed of trust, "[d]ocuments relating to mortgages and deeds associated with real property are public records [that] the court may take judicial notice of . . . without converting a motion to dismiss into one for summary judgment." *Perkins v. Lakeview Loan Servicing, LLC*, Case No. 2:22-cv-cv-10563, 2024 WL 100168, at *2 (E.D. Mich. Jan. 9, 2024).

Sutton stated that PennyMac had "called [ ] two [of the] negotiable instruments fraudulent checks, refused to process them, and sent them back[,]" but Sutton insisted that "[t]hose two negotiable instruments were sent as only negotiable instruments not checks." (*Id.*) Sutton stated that the other two "instruments sent to [PennyMac] [were] 1099A's" and that "[a]ll four of the instruments were certified with [Sutton's] signature which means that the US Treasury is obligated to fulfill them."[4] (*Id.*) Sutton further stated that, "[b]ecause tender of payment ha[d] been made, th[e] loan ha[d] been discharged, regardless if [PennyMac] ha[d] accepted it or rejected it." (*Id.*)

On June 12, 2023, Sutton sent PennyMac a "billing error dispute" stating that he was notifying PennyMac "in writing that [he] refuse[d] to pay this alleged debt" and "demanding that [PennyMac] cease all forms of communication with [Sutton] through any and all mediums UNLESS it pertains to [Sutton's] remedy in writing via mail pursuant [to] 15 USC 1692c.(c)."[5]

---

[4]    Sutton attached copies of the four "negotiable instruments" to his third amended complaint. (Doc. No. 18-1.)

[5]    Section 1692c(c) provides that:

**(c) Ceasing communication**

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--

**(1)** to advise the consumer that the debt collector's further efforts are being terminated;

**(2)** to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

**(3)** where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

(*Id.* at PageID# 281, 282.) On the same date, Sutton sent PennyMac an "Affidavit of Truth" asserting, among other things, that Sutton "believe[d] that all past, present, and future billing statements received by [*sic*] PENNYMAC are billing errors under 12 CFR 1026.13(a), beginning with the date the account was opened." (*Id.* at PageID# 285.)

On June 29, 2023, PennyMac sent Sutton a "Notice of Default and Intent to Accelerate" stating that Sutton was "in default under the terms of the documents creating and securing [the] Loan . . . for failure to pay the amounts due" and must pay "$3,171.31" in monthly payments and fees to cure the default. (Doc. No. 1-1, PageID# 12.) On September 25, 2023, Rubin Lublin sent Sutton a letter via certified and regular mail identifying itself as a law firm representing PennyMac and stating that it had "been retained to institute non-judicial foreclosure proceedings against the [ ] [P]roperty." (Doc. No. 18-1, PageID# 335.) Rubin Lublin stated that "[t]he foreclosure sale is scheduled for **November 14, 2023**" and "[e]nclosed . . . a copy of the Notice of Substitute Trustee's Sale that was submitted for publication in connection with [the] foreclosure sale . . . ." (*Id.*) Sutton wrote an undated letter to Rubin Lublin in response, stating "that the foreclose sale . . . for which you have given notice . . . is[ ] highly suspect if not criminally fraudulent[,] . . . improper[,] and without the force of law." (*Id.* at PageID# 328.)

PennyMac bought the Property at the foreclosure sale. (Doc. No. 30.) On November 17, 2023, Rubin Lublin sent another letter to Sutton via certified and regular mail informing Sutton of the sale, demanding possession of the property, and warning Sutton that he "must immediately vacate the premises and remove all personal property, or legal action [would] be taken against [him]." (Doc. No. 18-1, PageID# 332.)

---

15 U.S.C. § 1692c(c).

## B. Procedural History

Sutton initiated this action on October 25, 2023, by paying the Court's civil filing fee and filing two documents: a combined "Complaint and Memorandum in Support of Motion for Temporary Restraining Order (TRO) and Injunction to Arrest S[ei]zure and Sale of Property" (Doc. No. 1, PageID# 1) against PennyMac and a separate TRO motion (Doc. No. 2). The Court found that the combined complaint and memorandum did not comply with Federal Rule of Civil Procedure 3, which "require[s] that a civil action is commenced by filing a singular complaint[.]" (Doc. No. 6, PageID# 96 (citing Fed. R. Civ. P. 3).) The Court also found that the pleading did not comply with "Rule 8(a)'s requirement that a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" (*Id.* (quoting Fed. R. Civ. P. 8(a)(1)).) Specifically, the Court found that, because "Sutton's initial filing lack[ed] any defined cause of action and d[id] not adequately identify Sutton's specific legal claims[,]" it did "not contain enough to allow the Court or [PennyMac] to discern whether Sutton ha[d] demonstrated a plausible right to relief." (*Id.*) The Court explained that, "[t]o proceed, Sutton MUST submit an Amended Complaint that identifies, and provides a discernable legal basis for, his causes of action and contains factual allegations sufficient to demonstrate a plausible, non-speculative right to . . . relief thereupon." (*Id.* at PageID# 97.) The Court therefore ordered Sutton to file an amended complaint by November 29, 2023, and denied without prejudice Sutton's TRO motion on procedural grounds. (Doc. No. 6.)

On November 9, 2023, Sutton filed an "Amended Motion for Temporary Restraining Order (TRO) and Injunction to Arrest Seizure and Sale of Property" and a "Complaint and Memorandum in Support of Motion for Temporary Restraining Order (TRO) and Injunction to Arrest S[ei]zure and Sale of Property[.]" (Doc. No. 7, PageID# 99, 103.) The Court found that this filing was "very similar" to Sutton's previous filings, that the combined complaint and memorandum "again

violate[d] Rules 3 and 8(a)[,]" and that Sutton's filing "still lack[ed] any defined cause of action and [did] not adequately identify Sutton's specific legal claims." (Doc. No. 9, PageID# 126.) The Court also found that "the Amended TRO Motion continue[d] to be procedurally deficient" because it "lack[ed] any certificate of service, and Sutton ha[d] not, as required, certified in writing 'any efforts made to give notice and why it should not be required.'" (*Id.* (quoting Fed. R. Civ. P. 65(b)(1)(B)).) The Court denied without prejudice Sutton's amended TRO motion and provided him "an additional opportunity to submit a Second Amended Complaint that identifies, and provides a discernable legal basis for, his causes of action and contains factual allegations sufficient to demonstrate a plausible, non-speculative right to . . . relief." (*Id.* at PageID# 126.) The Court advised Sutton to "focus on specifying his legal claims against [PennyMac] and setting forth the 'who, what, where, when, why, and how' of events giving rise to those particular claims." (*Id.*) The Court ordered Sutton to file a second amended complaint by December 13, 2023. (Doc. No. 9.)

Sutton filed a second "Amended Motion for Temporary Restraining Order (TRO) and Injunction to Arrest Seizure and Sale of Property" (Doc. No. 15, PageID# 204) and yet another combined "Complaint and Memorandum in Support of Motion for Temporary Restraining Order (TRO) and Injunction to Arrest S[ei]zure and Sale of Property" (Doc. No. 16, PageID# 209) on November 14, 2023. On the same date, PennyMac filed a motion to dismiss Sutton's original and first amended complaints. (Doc. No. 12.)

The Court denied as moot PennyMac's motion to dismiss, found that Sutton's latest pleading "again violate[d] the Federal Rules[,]" and that "the amended TRO Motion remain[ed] procedurally-deficient . . . ." (Doc. No. 17, PageID# 235.) The Court found that, "[b]ecause Sutton ha[d] failed to comply with the Federal Rules on several occasions, the third 'Complaint and Memorandum' [was] subject to dismissal." (*Id.* at PageID# 236.) However, out of an abundance

of caution, the Court allowed "Sutton one <u>final</u> opportunity to submit a Third Amended Complaint that identifies, and provides a discernable legal basis for, his causes of action and contains factual allegations sufficient to demonstrate a plausible, non-speculative right to . . . relief." (*Id.*) The Court ordered Sutton to file an amended pleading by December 20, 2023. (Doc. No. 17.)

On December 20, 2023, Sutton filed a third amended complaint against PennyMac. (Doc. No. 18.) PennyMac moved to dismiss the third amended complaint under Rule 12(b)(6) for failure to state claims on which relief can be granted. (Doc. No. 19.) Sutton filed a combined "Response to Motion to Dismiss and Urgent Motion for a Temporary Restraining Order (TRO) for Eviction, Seizure and Sale of Property and Motion to Appear for a Permanent Injunction[.]" (Doc. No. 24, PageID# 445.) PennyMac responded in opposition to Sutton's motion. (Doc. No. 25.)

The Court denied without prejudice Sutton's "latest TRO motion" as procedurally deficient and again explained the procedural requirements for a properly supported TRO motion. (Doc. No. 27, PageID# 521.) On March 6, 2024, the Court found, "[a]s a threshold matter," that "it is not clearly apparent that the Court has subject-matter jurisdiction to hear this case." (Doc. No. 29, PageID# 526.) The Court explained that "Sutton relies upon diversity-of-citizenship jurisdiction, which requires that a litigant present a claim between parties who are citizens of different states with a value that exceeds $75,000." (*Id.* (citing 28 U.S.C. § 1332(a)).) The Court found that "the Third Amended Complaint alleges that Sutton, a Tennessee resident, suffered a wrongful foreclosure at the hands of [PennyMac] and its (unnamed) 'agents . . . [and] attorney(s)'" but did "not, however, allege the citizenship of any Defendant." (*Id.* at PageID# 527 (second and third alterations in original) (quoting Doc. No. 18, PageID# 237).) The Court therefore concluded that "the Third Amended Complaint [did] not yet establish complete diversity." (*Id.* at PageID# 527.) Rather than dismiss the third amended complaint, however, the Court "allow[ed] Sutton an

opportunity to address this concern" by ordering Sutton to show cause "why the Court may exercise diversity-of-citizenship jurisdiction in this case" by "submit[ting] either a Fourth Amended Complaint or a declaration that precisely identifies Defendants and contains allegations sufficient to establish that 'no plaintiff and no defendant are citizens of the same state.'" (*Id.* (quoting *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006)).)

On the same date, Sutton filed a fourth amended complaint (Doc. No. 30), but the Court initially found that it "suffer[ed] from the same apparent jurisdictional deficiency" and ordered Sutton to show cause by April 8, 2024, "why the Court may exercise diversity-of-citizenship jurisdiction over the Fourth Amended Complaint under the terms explained in the Court's March 6 Order." (Doc. No. 32.) Sutton filed a "Declaration of Jurisdiction and Venue" on April 4, 2024. (Doc. No. 36, PageID# 645.) The Court found that Sutton's declaration and fourth amended complaint, "taken together, address the Court's threshold concern" about subject-matter jurisdiction. (Doc. No. 37, PageID#648.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 37.) The Court also denied without prejudice PennyMac's motion to dismiss the third amended complaint. (Doc. No. 58.)

Sutton's fourth amended complaint names PennyMac, MERS, Bank of England, and Rubin Lublin as defendants. (Doc. No. 30.) Sutton "accuse[s]" the defendants "of Organized Collusion to Commit Mortgage Fraud by way of a false application, knowingly[ ] and purposefully constructing a false promissory note and deed; and filing a fraudulent lien in the County Register of Deeds office, conducting a fraudulent foreclosure, <u>leading to a fraudulent eviction</u> . . . ." (*Id.* at PageID# 529.) The specific legal claims enumerated in Sutton's fourth amended complaint include: (1) "fraud in the concealment"; (2) "unconscionable contract[s]"; (3) "breach of fiduciary

duty"; (4) "intentional infliction of emotional distress"; (5) "slander of title"; (6) "fraud and deception on the court"; (7) "wrongful foreclosure"; and (8) "defective" "assignment of mortgage[.]" (*Id.* at PageID# 550, 553, 554, 556, 558, 564 (first brackets in original).) Sutton seeks declaratory relief, injunctive relief, and monetary damages. (Doc. No. 30.)

On March 20, 2024, PennyMac filed a motion to dismiss Sutton's fourth amended complaint (Doc. No. 33) supported by a memorandum of law arguing that the Court should dismiss Sutton's claims against PennyMac and MERS under Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6) (Doc. No. 34). Sutton filed a response to PennyMac and MERS's motion (Doc. No. 39), and PennyMac and MERS filed a reply (Doc. No. 40). Bank of England filed a motion to join PennyMac and MERS's motion to dismiss the fourth amended complaint, stating that the Court should dismiss Sutton's claims against Bank of England under Rule 12(b)(1) and 12(b)(6) for the reasons stated in PennyMac and MERS's supporting memorandum of law. (Doc. No. 41.) Rubin Lublin filed a "Notice and Joinder in PennyMac" and MERS's motion to dismiss the fourth amended complaint, stating that the Court should dismiss Sutton's claims against it under Rules 12(b)(1) and 12(b)(6) for the reasons articulated in PennyMac and MERS's briefing.[6] (Doc. No. 46, PageID# 697.)

Sutton filed a motion for summary judgment on April 29, 2024 (Doc. No. 45), and filed a corrected motion for summary judgment on May 10, 2024 (Doc. No. 47). PennyMac and MERS responded in opposition to Sutton's motions for summary judgment (Doc. No. 48), and Bank of England filed a "joinder" in PennyMac and MERS's response (Doc. No. 49, PageID# 801).

---

[6]     Unlike PennyMac and MERS (Doc. No. 34), neither Bank of England nor Rubin Lublin argues for dismissal of Sutton's claims against them under Rule 12(b)(5) for insufficient service of process (Doc. Nos. 41, 46).

On June 10, 2024, Sutton filed a "motion to join" this case with Case No. 2:24-cv-00014, arguing that "the two cases are intertwined." (Doc. No. 50, PageID# 804, 805.) PennyMac and MERS oppose Sutton's motion. (Doc. No. 53.)

Sutton also filed a purported fifth amended complaint on June 10, 2024, adding Hargett and State Farm as defendants. (Doc. No. 51.) PennyMac and MERS filed a motion to strike the fifth amended complaint as improperly filed under Rule 12(f) or, in the alternative, to dismiss the fifth amended complaint under Rules 12(b)(2), 12(b)(5), and 12(b)(6). (Doc. No. 54.) Rubin Lublin filed a "Notice and Joinder in PennyMac" and MERS's motion to strike or dismiss (Doc. No. 56, PageID# 935) and Bank of England filed a motion to join PennyMac and MERS's motion to strike or dismiss (Doc. No. 57). State Farm appeared and filed a "Response Adopting and Joining in" PennyMac and MERS's motion to strike or dismiss the fifth amended complaint. (Doc. No. 65, PageID# 962.) Sutton responded in opposition to PennyMac and MERS's motion to strike or dismiss. (Doc. No. 60.) PennyMac and MERS filed a reply in support of their motion (Doc. No. 66) and Sutton filed a surreply (Doc. No. 68) without seeking the Court's permission.

Hargett appeared and filed an answer to Sutton's purported fifth amended complaint. (Doc. No. 62.)

On August 16, 2024, Sutton filed a motion for discovery. (Doc. No. 70.) PennyMac and MERS responded in opposition to Sutton's motion. (Doc. No. 71.) Sutton did not file an optional reply.

## II.     Analysis

As an initial matter, Bank of England, Rubin Lublin, and State Farm have filed motions, notices, or responses seeking to join PennyMac and MERS's dispositive motions and incorporating by reference PennyMac and MERS's factual and legal arguments. (Doc. Nos. 41, 46, 56, 57, 65.) "Under Local Rule 7.01, any Court action that requires resolution of an issue of law must be

performed pursuant to a party's motion and separate memorandum of law." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 360 F. Supp. 3d 714, 718 n.1 (M.D. Tenn. 2019) (Crenshaw, C.J.); *see also* M.D. Tenn. R. 7.01(a)(2) (motion and supporting memorandum). Moreover, the District Judge's "Judicial Preferences" expressly state that "[c]ounsel should never incorporate legal authority or factual argument from another document, including a prior brief or the brief of another party in the case." Judge Waverly D. Crenshaw, Jr., *Judicial Preferences* at 2, ¶ 9, https://www.tnmd.uscourts.gov/sites/tnmd/files/Judicial%20Preferences%2020200420.pdf (last visited Jan. 22, 2025); *see also Deja Vu of Nashville, Inc.*, 360 F. Supp. 3d at 718 n.1 (quoting *id.*). Accordingly, Bank of England, Rubin Lublin, and State Farm are required to file separate dispositive motions accompanied by supporting memorandums of law. Bank of England's motions to join (Doc. Nos. 41, 57) and, to the extent they can be construed as motions, Rubin Lublin's notices (Doc. Nos. 46, 56) and State Farm's response (Doc. No. 65) should be denied without prejudice.

## A.    Sutton's Purported Fifth Amended Complaint

PennyMac and MERS argue that Sutton improperly filed his fifth amended complaint under Rule 15(a) and that the Court should therefore strike the fifth amended complaint under Rule 12(f). (Doc. No. 55.)

Federal Rule of Civil Procedure 12(f) provides that the Court may, upon a party's motion or sua sponte, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015); *see also Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) ("[T]he action of striking a pleading should be sparingly used by the courts . . . [and] is a drastic remedy to be resorted to only when required for

the purposes of justice."). However, district courts have ample discretion to strike filings under Rule 12(f), and their decisions are reviewed only for abuse of that discretion. *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 697 (6th Cir. 2017); *Operating Eng'rs Local 324*, 783 F.3d at 1050.

Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). This Court's Local Rules provide that a party may seek the Court's leave to amend a pleading by filing "[a] motion to amend" that "[d]escribe[s] the reasons supporting the proposed amendments and the substance of the amendments sought, and include[s] as an appended exhibit the signed proposed amended pleading[.]" M.D. Tenn. R. 15.01(a)(1) (supporting papers).

The docket reflects that Sutton filed his fifth amended complaint on June 10, 2024 (Doc. No. 51), ninety-six days after filing and serving his fourth amended complaint (Doc. No. 30) and eighty-two days after PennyMac and MERS filed their motion to dismiss the fourth amended complaint (Doc. No. 33). Sutton therefore did not file the fifth amended complaint as a matter of course under Rule 15(a)(1).

Consequently, under Rule 15(a)(2), Sutton was required to seek either the Court's leave or the defendants' written consent to file the fifth amended complaint. Fed. R. Civ. P. 15(a)(2). Sutton did not file a motion for leave to amend as required by Local Rule 15.01. Nor has Sutton disputed PennyMac and MERS's assertion that he did not obtain "the consent of any of the defendants in this case" before filing his fifth amended complaint. (Doc. No. 55, PageID# 892.)

Sutton argues that, "[p]ursuant to Federal Rule[ ] of Civil Procedure[ ]15[(c)][,] [a]mendments can be made when the amendment relates back." (Doc. No. 60, PageID# 945.) Sutton states that "[t]here was essentially no change in the content of the 4th and 5th amended complaints . . . ." (*Id.*) "The amendment was only in naming more corporations and the existing corporations['] subsidiary companies in the action of collusion to commit mortgage securities fraud which is allowable under that rule." (*Id.*) Rule 15(c) governs relation back of amendments, but it does not provide a separate avenue from Rule 15(a) for amending a pleading. *See* Fed. R. Civ. P. 15(a), (c). Under Rule 15(a), Sutton may file his fifth amended complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Sutton's fifth amended complaint is therefore improperly filed under Rule 15(a), and the Court should grant PennyMac and MERS's motion to strike the fifth amended complaint under Rule 12(f). *See, e.g.*, *Love v. Mich. Prop. Res.*, 737 F. Supp. 3d 600, 604, 608 (E.D. Mich. 2024) (striking plaintiffs' re-filed second amended complaint under Rule 12(f) where "Plaintiffs did not request leave to refile the second amended complaint"); *Medpace, Inc. v. Biothera, Inc.*, No. 1:12-cv-179, 2013 WL 5937040, at *1 (S.D. Ohio Nov. 4, 2013) ("Amended pleadings filed without the party first seeking and obtaining leave as required by Federal Rule of Civil Procedure 15(a) may be stricken pursuant to Rule 12(f).").

Sutton's fourth amended complaint remains the operative pleading in this action.

### B.     Sutton's Motions to Join, for Summary Judgment, and for Discovery

#### 1.     Motion to Join

Sutton "ask[s] the court to [d]elay or [e]njoin case No. 2:24-CV-00014 and case No. 2:23-CV-00064 because the two cases are intertwined." (Doc. No. 50, PageID# 805.) The Court construes this motion as a motion under Federal Rule of Civil Procedure 42(a), which provides:

**(a) Consolidation.** If actions before the court involve a common question of law or fact, the court may:

> **(1)** join for hearing or trial any or all matters at issue in the actions;
>
> **(2)** consolidate the actions; or
>
> **(3)** issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a)(1)–(3). "To consolidate two actions under Rule 42(a), however, the Court must have separate jurisdictional bases for each case." *Williams v. Shamburger*, Case No. 1:22-cv-202, 2022 WL 3718484, at *1 (E.D. Tenn. Aug. 29, 2022); *see also Heck v. Bd. of Trs., Kenyon Coll.*, 12 F. Supp. 2d 728, 747 (S.D. Ohio 1998) (finding that "consolidation under Rule 42(a) was improper" where one "case was not properly removed and pending before this court prior to consolidation"); *U.S. ex rel. Owens-Corning Fiberglass Corp. v. Brandt Constr. Co.*, 826 F.2d 643, 647 (7th Cir. 1987) (holding that "Rule 42(a) requires that *both* actions be 'pending before the court' and an improperly removed action does not meet this criterion"). In Case No. 2:24-cv-14, the Magistrate Judge has recommended granting PennyMac's motion to remand the action to state court because Sutton and his wife (who are the defendants in that action) have not established that the Court has subject-matter jurisdiction over that removal action. Report and Recommendation, *PennyMac Loan Servs., LLC v. Sutton*, Case No. 2:24-cv-00014 (M.D. Tenn. Jan. 27, 2025), ECF No. 28.

Sutton's motion to join (Doc. No. 50) should therefore be denied.

## 2.    Motions for Summary Judgment

Sutton's motions for summary judgment (Doc. Nos. 45, 47) do not comply with the Court's Local Rules. First, Local Rule 7.01(a)(2) provides that "every motion that may require the resolution of an issue of law must be accompanied by a separately filed memorandum of law citing supporting authorities and, where allegations of fact are relied upon, affidavits, depositions, or

other exhibits in support thereof." M.D. Tenn. R. 7.01(a)(2) (motion and supporting memorandum). Sutton's motions recite the legal standards for granting summary judgment under Federal Rule of Civil Procedure 56, and for stating a claim on which relief can be granted under Rules 8(a) and 12(b)(6) (Doc. Nos. 45, 47), but Sutton has not filed the required supporting memorandums setting out specific factual and legal support for his arguments. Sutton also has not complied with Local Rule 56.01(b)'s requirements regarding statements of undisputed material facts. M.D. Tenn. R. 56.01(b) (statement of undisputed material facts).

Sutton's motions for summary judgment should therefore be denied without prejudice.

### 3.    Motion for Discovery

Sutton filed a motion for discovery asking the Court to issue subpoenas to the Social Security Administration, LexisNexis, the Internal Revenue Service, the Federal Reserve, the State of Tennessee, and each named defendant requiring production of a broad range of documents and information. (Doc. No. 70.) Sutton argues that "a broad sweep" is "require[d]" "to identify subsidiaries that would not normally be accessed by just naming the individual Defendant name as listed in the lawsuit" and "that evidence was and is needed for a jury to accurately determine matters aright in this case and be able to calculate [ ] what damages, if any, should be awarded." (*Id.* at PageID#988, 989.) PennyMac and MERS oppose Sutton's motion, arguing that it is premature because "the Court has not entered any initial scheduling order setting forth any case management deadlines and the parties have not to date held a Rule 26(f) conference in this case." (Doc. No. 71, PageID# 994 (footnote omitted).)

PennyMac and MERS are correct that discovery has not yet begun in this action and will not begin until the Court resolves the remaining dispositive motions and enters a scheduling order. Sutton's motion for discovery should therefore be denied without prejudice as premature.

## C.    Sutton's Fourth Amended Complaint

PennyMac and MERS moved to dismiss Sutton's fourth amended complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction, Rule 12(b)(5) for insufficient service of process, and Rule 12(b)(6) for failure to state a claim on which relief can be granted. (Doc. Nos. 33, 34.) For the reasons that follow, the Magistrate Judge will recommend finding that PennyMac and MERS are no longer pursuing their jurisdictional arguments under Rule 12(b)(1); that dismissal is warranted under Rule 12(b)(5) because Sutton has not perfected service of process on PennyMac and MERS; and that PennyMac and MERS have not carried their burden to show that dismissal is also warranted under Rule 12(b)(6).

### 1.    Rule 12(b)(1) Arguments

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States," and several other categories of cases not at issue here.[7] U.S. Const. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted federal courts diversity jurisdiction over civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Whether the Court has subject-matter jurisdiction is a "threshold" question in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle

---

[7]    For example, cases involving ambassadors, public ministers, and consuls and cases between two states or in which the United States is a party. U.S. Const. art. III, § 2, cl. 1.

that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Id.* at 104. A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 861 (6th Cir. 2022). A factual attack "'contests the alleged jurisdictional facts by introducing evidence outside the pleadings.'" *Id.* (quoting *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021)). In resolving factual attacks, "'the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts, and the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.'" *Id.* (quoting *Gaetano*, 994 F.3d at 505).

PennyMac and MERS argue that Sutton has not sufficiently alleged diversity jurisdiction because the fourth amended complaint "fails to set forth any facts concerning the citizenship of Penny[M]ac, MERS, or co-defendant Bank of England." (Doc. No. 34, PageID# 596.) But PennyMac and MERS filed their motion to dismiss the fourth amended complaint and supporting memorandum of law (Doc. Nos. 33, 34) before Sutton filed his "declaration of jurisdiction and venue" which includes allegations regarding the defendants' citizenship (Doc. No. 36, PageID# 645), and before the Court found that Sutton's fourth amended complaint and declaration,

"taken together, address the Court's threshold concern" about subject-matter jurisdiction (Doc. No. 37, PageID# 648). Notably, PennyMac and MERS's reply in support of their motion to dismiss the fourth amended complaint does not address subject-matter jurisdiction.[8] It thus appears that, to the extent the Court has not already resolved subject-matter jurisdiction, PennyMac and MERS have abandoned this argument.

## 2. Rule 12(b)(5) Arguments

Rule 12(b)(5) authorizes courts to dismiss a complaint for insufficient service of process, including for failure to comply with the service requirements of Federal Rule of Civil Procedure 4. Fed. R. Civ. P. 12(b)(5); *see* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (4th ed. suppl. June 2024) ("A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery, the lack of delivery, or the timeliness of delivery of the summons and complaint." (footnotes omitted)). "In deciding a motion to dismiss under Rule 12(b)(5), the court may refer to record evidence in determining the sufficiency of service[,]" including "uncontroverted affidavits . . . ." *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006); *see also Spencer v. Caracal Int'l, LLC*, 516 F. Supp. 3d 755, 758 (M.D. Tenn. 2021) (Crenshaw, C.J.) (finding that courts considering Rule 12(b)(5) motions "'may look to "record evidence" and "uncontroverted affidavits" in determining'" sufficiency of service (quoting *Chapman v. Lawson*, 89 F. Supp. 3d 959, 971 (S.D. Ohio 2015))). The plaintiff bears the burden to establish that service was proper. *Spencer*, 516 F. Supp. 3d at 758; *Sawyer v. Lexington-Fayette Urb. Cnty. Gov't*, 18 F. App'x 285, 287 (6th Cir. 2001) (citing *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)).

---

[8] PennyMac and MERS also did not raise lack of subject-matter jurisdiction as a ground for dismissal of the fifth amended complaint. (Doc. Nos. 54, 55.)

On October 26, 2023, at Sutton's request, the Clerk of Court issued a summons addressed to PennyMac at "Loss Mitigation Dept. 3043[,] Townsgate Road Suite 200[,] Westlake Village, CA 91361[.]" (Doc. No. 5.) On November 9, 2023, Sutton filed a mostly blank proof of service form signed by his wife and attached a U.S. Postal Service (USPS) domestic return receipt showing that someone named "Andres Lopez" signed for an "[a]rticle" of mail addressed to PennyMac's Loss Mitigation Department at the Townsgate Road address on October 30, 2023. (Doc. No. 8, PageID# 123.)

On March 21, 2024, again at Sutton's request, the Clerk of Court issued another summons to PennyMac addressed to PennyMac's counsel in Atlanta, Georgia. (Doc. No. 35.) The Clerk of Court also issued a summons addressed to MERS "c/o Bill Beckmann[,] 11819 Miami Street[,] Omaha NE 68164[.]" (*Id.* at PageID# 642.) Sutton filed proof of service affidavits for these summonses on April 9, 2024, both of which are signed by Sutton's wife. (Doc. No. 38.) The affidavits state that the summons addressed to PennyMac was sent via USPS "certified mail" "signature required[,]" provide a tracking number associated with that mailing, and attach a certified mail receipt. (*Id.* at PageID# 652, 654.) The affidavits state that the summons addressed to MERS was sent via "certified" mail and attach a certified mail receipt. (*Id.* at PageID#653, 654.)

PennyMac and MERS argue that Sutton's efforts to serve them do not comply with the requirements of Rule 4(h), and that dismissal is therefore warranted under Rule 12(b)(5). (Doc. Nos. 34, 55.) Specifically, PennyMac argues that Sutton did not send the first summons "by certified mail, the mailing was not addressed to an officer or agent authorized to receive service of process on behalf of Penny[M]ac, and an authorized agent did not sign for it." (Doc. No. 34, PageID# 597.) It argues that Sutton's attempt to serve the second summons was defective "because it was not addressed to an officer or agent authorized to receive service of process on behalf of

Penny[M]ac, and an authorized agent did not sign for it." (Doc. No. 55, PageID#891 (citing Doc. No. 38, PageID# 652).) MERS argues that Sutton's attempt to serve it "[d]oes not constitute proper service of process" because Sutton has not "demonstrate[d] that the certified mailing was actually received by an authorized agent for MERS, such that service of process would be effective . . . ." (*Id.* at PageID# 892.)

Rule 4(h) provides two ways in which a plaintiff can properly serve a defendant corporation. First, a plaintiff may accomplish service on a domestic or foreign corporation in a United States judicial district

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]

Fed. R. Civ. P. 4(h)(1)(B). "Courts interpreting this rule have found 'that delivery means personal delivery, not service by mail.'" *Emiabata v. Farmers Ins. Corp.*, Case No. 3:23-cv-00263, 2024 WL 4940543, at *4 (M.D. Tenn. Dec. 2, 2024) (quoting *Cunningham v. Select Student Loan Help, LLC*, No. 3:15-cv-00554, 2016 WL 7368595, at *3 (M.D. Tenn. Dec. 20, 2016), *report and recommendation adopted*, 2017 WL 10399393 (M.D. Tenn. May 25, 2017)), *report and recommendation adopted*, 2024 WL 5248244 (M.D. Tenn. Dec. 30, 2024). Here, there is no indication that Sutton caused copies of the summonses and complaint to be personally delivered to authorized individuals at PennyMac and MERS. Rule 4(h)(1)(B) therefore is not satisfied.

The second method of service under Rule 4(h) allows for service of a corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual[.]" Fed. R. Civ. P. 4(h)(1)(A). That method of service involves "following state law for serving a summons . . . in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). This Court is located in Tennessee and Sutton first attempted to serve PennyMac in California.

The Tennessee Rules of Civil Procedure provide that service on a defendant located outside of the state may be made in accordance with Tennessee Rule of Civil Procedure 4.04, in a manner prescribed by the state in which service is effected for an action in courts of general jurisdiction of that state, or as directed by the court. Tenn. R. Civ. P. 4.05(1)(a)–(c). Rule 4.04 provides that a domestic corporation may be served "by delivering a copy of the summons and of the complaint to an officer or managing agent thereof, or . . . to any other agent authorized by appointment or by law to receive service on behalf of the corporation." Tenn. R. Civ. P. 4.04(4). Tennessee law also authorizes service of process by certified mail. Tenn. R. Civ. P. 4.04(10). Tennessee Rule of Civil Procedure 4.03(2) provides that service by certified mail is complete only "[i]f the return receipt is signed by the defendant, or by a person designated by Rule 4.04 or by statute[.]" Tenn. R. Civ. P. 4.03(2); *see also Hall v. Haynes*, 319 S.W.3d 564, 577 (Tenn. 2010) (discussing "Rule 4.03's explicit restriction of who[ ] may sign the return receipt"). "[U]nder either [Tennessee] or federal procedural rules, a plaintiff bears the burden of demonstrating that he [or she] has served a copy of the summons and complaint on an officer, managing or general agent, or some other agent authorized by appointment or by law to accept service of process on behalf of the defendant corporation." *Pride v. U.S. Smokeless Tobacco Mfg. Co.*, Civ. No. 3:10-0597, 2011 WL 344105, at *2 (M.D. Tenn. Feb. 1, 2011), *report and recommendation adopted*, 2011 WL 734937 (M.D. Tenn. Feb. 23, 2011).

Under California law, a corporation can be served by delivering a copy of a summons and complaint to a list of designated individuals, including the corporation's registered agent, president, chief executive officer, other listed officers and managers, or another person authorized by the corporation to receive service of process. Cal. Civ. Proc. Code § 416.10 (West 2022). Service may also be made on a corporation by mailing a copy of the summons and the complaint to one of the individuals designated in section 416.10. *Id.* §§ 415.30, 416.10. Mailing the summons and complaint to the defendant corporation, rather than one of the designated individuals, does not constitute valid service. *Dill v. Berquist Constr. Co.*, 29 Cal. Rptr. 2d 746, 751 (Cal. Ct. App. 1994). Service by mail is only complete upon execution and return of a written acknowledgement of receipt. Cal. Civ. Proc. Code § 415.30 (West 2022); *see also, e.g., Poorsina v. Tseng*, No. 20-CV-09122, 2022 WL 110649, at *4 (N.D. Cal. Jan. 12, 2022) (citing *Thierfeldt v. Marin Hosp. Dist.*, 35 Cal. App. 3d 186, 199 (1973)) (finding that service by mail was ineffective when the addressees failed to execute and return a written acknowledgment of service).

*Emiabata*, 2024 WL 4940543, at *5 (alterations in original) (quoting *Emiabata v. Farmers Ins. Corp.*, Case No. 3:21-cv-00477, 2023 WL 137464, at *4–5 (M.D. Tenn. Jan. 9, 2023), *report and recommendation adopted*, 2023 WL 2242315 (M.D. Tenn. Feb. 27, 2023)).

Sutton has not shown that his first attempt to serve PennyMac by mail complied with Tennessee or California law. Even if Sutton sent the first summons via certified mail, there is no basis on which to find that Andres Lopes—the person who signed for the mailing—is designated to receive service of process for PennyMac under Tennessee or California law.

Sutton also has not shown that his second attempt to serve PennyMac by mailing a summons to its counsel in Georgia complies with Tennessee law. Under Tennessee law, "[t]he defendant's attorney is not deemed an agent appointed to receive service of process absent a factual basis for believing that such an appointment by the defendant has occurred." *Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924, 929 (E.D. Tenn. 2002). Sutton has not identified any such factual basis in the record here. Nor has Sutton shown that his attempt to serve PennyMac's counsel via certified mail complies with Georgia law. "Georgia law requires personal service unless the defendant executes a [ ] waiver of personal service." *Profit v. Americold Logistics, LLC*, 248 F.R.D. 293, 295 (N.D. Ga. 2008) (citing Ga. Code Ann. § 9-11-4); *see also Madden v. Cleland*, 105 F.R.D. 520, 523 (N.D. Ga. 1985) ("Georgia law has no provision for service by mail.").

Sutton also has not shown that his attempt to serve MERS complies with Tennessee law. Although the proof of service affidavit states that the summons was sent by certified mail and attaches a certified mail receipt (Doc. No. 38), Sutton has not presented a signed return receipt or any other factual basis on which to find that an authorized MERS officer or agent signed for the mailing. Nor has Sutton shown that his attempt to serve MERS complies with Nebraska law. Under Nebraska law,

> A corporation may be served by personal, residence, certified mail, or designated delivery service upon any officer, director, managing agent, or registered agent, or by leaving the process at the corporation's registered office with a person employed therein, or by certified mail or designated delivery service to the corporation's registered office.

23

Neb. Rev. Stat. Ann. § 25-509.01. Nebraska laws governing service by certified mail further provide that:

> Certified mail service [ ] shall be made by (i) within ten days of issuance, sending the summons to the defendant by certified mail with a return receipt requested showing to whom and where delivered and the date of delivery, and (ii) filing with the court proof of service with the signed receipt attached[.]

*Id.* § 25-505.01(1)(c); *see also id.* § 25-507.01(2) ("When service is by certified mail service . . . , the plaintiff or plaintiff's attorney shall file proof of service within ten days after the signed receipt is received or is available electronically, whichever occurs first."). Sutton has not filed a signed certified mail receipt showing "to whom and where [the summons to MERS was] delivered and the date of delivery[.]" *Id.* § 25-205.01(1)(c).

Sutton therefore has not shown that he has effected service of process on PennyMac and MERS in compliance with Rule 4(h)(1)(A). His claims against PennyMac and MERS may be dismissed on this basis without prejudice to Sutton filing a motion under Rule 4(m) to extend the deadline to serve PennyMac and MERS for the Court's consideration.

### 3. Rule 12(b)(6) Arguments

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*

*v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Sutton appears pro se, the Court construes his filings "'liberally'" and holds his fourth amended complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

PennyMac and MERS assert that:

> Although not entirely clear, [Sutton's] Fourth Amended Complaint, construed liberally, appears to allege that Penny[M]ac lacked standing to foreclose on the Property on November 14, 2023 due to the alleged securitization of [Sutton's] Loan and because Penny[M]ac has allegedly failed to produce the original Note to Plaintiff. *See* [Doc. No.] 32, pp. 2, 3, 5, 10, 11, 13, 14, 15, 18, 32, 39, 48–50. Based upon these erroneous assertions, [Sutton's] Fourth Amended Complaint purports to assert claims for: (1) fraud in the concealment; (2) "unconsionable' [*sic*] contract[s]"; (3) breach of fiduciary duty; (4) intentional infliction of emotional distress; (5) slander of title; (6) declaratory relief; (7) "fraud and deception on the

Court"; (8) wrongful foreclosure; and (9) improper assignment of the Deed of Trust.

(Doc. No. 34, PageID# 593 (last alteration in original).)

In arguing that Sutton has failed to state a claim on which relief can be granted, PennyMac and MERS do not address the nine specific causes of action they identify and do not cite or apply the legal standards relevant to these types of claims. *Cf. Poltec, Inc. v. Willingham*, Case No. 3:20-cv-01049, 2023 WL 2749153, at *6 (M.D. Tenn. Mar. 31, 2023) (citing *Robinson v. Shelby Cnty.*, Civ. No. 3:17-cv-00097, 2020 WL 1170218, at *9 (E.D. Ky. Mar. 11, 2020), for the proposition that "that defendants fail[ ] to meet their burden on summary judgment when they [do] not cite or apply the standards applicable to [plaintiff's] claims"). Instead, PennyMac and MERS make general arguments about the allegations underlying Sutton's asserted claims. But they do not tie those arguments to the particular causes of action Sutton asserts. PennyMac and MERS therefore have not shown, based on this briefing, that they are entitled to dismissal of Sutton's claims under Rule 12(b)(6). *See, e.g.*, 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (4th ed. suppl. July 12, 2024) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists.").

## III.    Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that:

- Bank of England's motion to join PennyMac and MERS's motion to dismiss the fourth amended complaint (Doc. No. 41) and motion to join PennyMac and MERS's motion to strike or dismiss the fifth amended complaint (Doc. No. 57) be DENIED WITHOUT PREJUDICE;

- Rubin Lublin's notices of joinder in PennyMac and MERS's motion to dismiss the fourth amended complaint and motion to strike or dismiss the fifth amended

complaint (Doc. Nos. 46, 56) and State Farm's response seeking to join PennyMac and MERS's motion to strike or dismiss the fifth amended complaint (Doc. No. 65), to the extent that they can be construed as motions, be DENIED WITHOUT PREJUDICE;

- PennyMac and MERS's motion to strike or dismiss the fifth amended complaint (Doc. No. 54) be GRANTED IN PART and Sutton's fifth amended complaint (Doc. No. 51) be STRICKEN from the docket;

- Sutton's motion to join this case with Case No. 2:24-cv-0014 (Doc. No. 50) be DENIED;

- Sutton's motion for summary judgment (Doc. No. 45) and corrected motion for summary judgment (Doc. No. 47) be DENIED WITHOUT PREJUDICE;

- Sutton's motion for discovery (Doc. No. 70) be DENIED WITHOUT PREJUDICE and

- PennyMac and MERS's motion to dismiss the fourth amended complaint (Doc. No. 33) be GRANTED IN PART, and that Sutton's claims against them be DISMISSED WITHOUT PREJUDICE under Rule 12(b)(5) for insufficient service of process.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 27th day of January, 2025.

ALISTAIR E. NEWBERN
United States Magistrate Judge