UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JOEL AARON SUTTON,<br><br>    Plaintiff,<br><br>v.<br><br>PENNY MAC LOAN SERVICES, LLC, et al.,<br><br>    Defendants. | Case No. 2:23-cv-00064<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

This case is one of three civil actions arising out of the foreclosure and sale of pro se Plaintiff Joel Aaron Sutton and his wife Melissa Terry Sutton's home in Dixon Springs, Tennessee. (Doc. No. 30); *see Pennymac Loan Servs., LLC v. Sutton*, Case No. 2:24-cv-00014, 2025 WL 310133 (M.D. Tenn. Jan. 27, 2025) (recommending remanding unlawful detainer action to state court for lack of subject-matter jurisdiction), *report and recommendation adopted*, 2025 WL 555546 (M.D. Tenn. Feb. 19, 2025); Amended Complaint, *Sutton v. Tennessee*, Case No. 2:25-cv-00035 (M.D. Tenn. May 22, 2025), ECF No. 16. In this action, Sutton brought claims against PennyMac Loan Services, LLC, Mortgage Electronic Registration Systems, Inc. (MERS), Defendant Rubin Lublin, LLC, and Defendant Bank of England for violations of mortgage and securities fraud laws, among other causes of action. (Doc. No. 30.) Sutton's claims rest on his allegations that Bank of England falsely induced him to enter into the mortgage agreement by pretending it was an actual lender while concealing its plan to securitize the mortgage note. (*Id.*) Sutton alleges that, "[b]y concealing the securitization, the true character of the purported loan . . .

[was] not disclosed" and "it created no underlying obligation between the parties to the contract." (*Id.* at PageID# 551.)

The Court has dismissed Sutton's claims against PennyMac and MERS under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. (Doc. Nos. 74, 79); *Sutton v. Penny Mac Loan Servs., LLC*, Case No. 2:23-cv-00064, 2025 WL 342197 at *9–12, *14 (M.D. Tenn. Jan. 27, 2025) (recommending granting in part PennyMac and MERS's motion to dismiss), *report and recommendation adopted*, 2025 WL 611061 (M.D. Tenn. Feb. 25, 2025).

Remaining Defendants Rubin Lublin and Bank of England have filed motions to dismiss Sutton's claims against them. (Doc. Nos. 83, 91.) Sutton has responded in opposition to Rubin Lublin's and Bank of England's motions. (Doc. Nos. 90, 93, 94.)

For the reasons that follow, the Magistrate Judge will recommend that the Court grant Rubin Lublin's and Bank of England's motions.

I.      **Background**

A.      **Factual Background**

The Court described the factual allegations of Sutton's fourth amended complaint in a previous report and recommendation:

>   Sutton alleges that, in 2018, he "was lured into filling out an application for [a] home loan" and "the Bank of England approved a loan up to $350,000.00." (Doc. No. 30, PageID# 532, 533.) On February 12, 2019, Sutton closed on a loan of $162,121.00 from Bank of England and executed a promissory note associated with the loan. (Doc. Nos. 1-2, 30.) Sutton and his wife signed a deed of trust on the same date to secure the loan, conveying the property at 876 Nichols Road in Dixon Springs (the Property) to MERS as nominee for Bank of England and its successors and assigns. (Doc. Nos. 1-2, 30.) The deed of trust was recorded with the Macon County, Tennessee, Register of Deeds. (Doc. No. 1-2.)

>   MERS assigned the deed of trust to PennyMac on June 2, 2020, via a corporate assignment of deed of trust recorded with the Macon County Register of Deeds. (Doc. No. 1-2.) Sutton signed a loan modification agreement with PennyMac on January 22, 2021, that was filed and recorded with the Smith County, Texas, County Clerk on March 11, 2021. (Doc. No. 34-1.)

Between April and June 2023, Sutton and PennyMac exchanged letters regarding a loan payment dispute. (Doc. No. 18-1.) In a letter from PennyMac to Sutton dated April 26, 2023, PennyMac stated that Sutton had sent a "fraudulent check received on April 17, 2023, addressed to PennyMac . . . , in an attempt to satisfy the . . . loan." (*Id.* at PageID# 310.) PennyMac "respectfully decline[d] the check" and informed Sutton that "the loan remain[ed] due for the April 2023 payment." (*Id.*) PennyMac sent Sutton a similar letter dated May 3, 2023, stating that it received another "fraudulent check [ ] on May 1, 2023, addressed to Mr. David Spector, President and Chief Operations Officer of PennyMac . . . , in an attempt to satisfy the . . . loan." (*Id.* at PageID# 312.) PennyMac "again respectfully decline[d] [the] check" and stated that "the loan remain[ed] due for the April 2023 payment and all subsequent payments." (*Id.*)

Sutton wrote PennyMac a letter dated May 19, 2023, stating that PennyMac "ha[d] been paid with four negotiable instruments that [Sutton] sent to [PennyMac]." (*Id.* at PageID# 280.) Sutton stated that PennyMac had "called [ ] two [of the] negotiable instruments fraudulent checks, refused to process them, and sent them back[,]" but Sutton insisted that "[t]hose two negotiable instruments were sent as only negotiable instruments not checks." (*Id.*) Sutton stated that the other two "instruments sent to [PennyMac] [were] 1099A's" and that "[a]ll four of the instruments were certified with [Sutton's] signature which means that the US Treasury is obligated to fulfill them." (*Id.*) Sutton further stated that, "[b]ecause tender of payment ha[d] been made, th[e] loan ha[d] been discharged, regardless if [PennyMac] ha[d] accepted it or rejected it." (*Id.*)

On June 12, 2023, Sutton sent PennyMac a "billing error dispute" stating that he was notifying PennyMac "in writing that [he] refuse[d] to pay this alleged debt" and "demanding that [PennyMac] cease all forms of communication with [Sutton] through any and all mediums UNLESS it pertains to [Sutton's] remedy in writing via mail pursuant [to] 15 USC 1692c.(c)." (*Id.* at PageID# 281, 282.) On the same date, Sutton sent PennyMac an "Affidavit of Truth" asserting, among other things, that Sutton "believe[d] that all past, present, and future billing statements received by [sic] PENNYMAC are billing errors under 12 CFR 1026.13(a), beginning with the date the account was opened." (*Id.* at PageID# 285.)

On June 29, 2023, PennyMac sent Sutton a "Notice of Default and Intent to Accelerate" stating that Sutton was "in default under the terms of the documents creating and securing [the] Loan . . . for failure to pay the amounts due" and must pay "$3,171.31" in monthly payments and fees to cure the default. (Doc. No. 1-1, PageID# 12.) On September 25, 2023, Rubin Lublin sent Sutton a letter via certified and regular mail identifying itself as a law firm representing PennyMac and stating that it had "been retained to institute non-judicial foreclosure proceedings against the [ ] [P]roperty." (Doc. No. 18-1, PageID# 335.) Rubin Lublin stated that "[t]he foreclosure sale is scheduled for November 14, 2023" and "[e]nclosed . . . a copy of the Notice of Substitute Trustee's Sale that was submitted for publication in connection with [the] foreclosure sale . . . ." (*Id.*) Sutton wrote an undated letter to Rubin Lublin in response, stating "that the foreclose sale . . . for which you have

given notice . . . is[ ] highly suspect if not criminally fraudulent[,] . . . improper[,] and without the force of law." (*Id.* at PageID# 328.)

PennyMac bought the Property at the foreclosure sale. (Doc. No. 30.) On November 17, 2023, Rubin Lublin sent another letter to Sutton via certified and regular mail informing Sutton of the sale, demanding possession of the property, and warning Sutton that he "must immediately vacate the premises and remove all personal property, or legal action [would] be taken against [him]." (Doc. No. 18-1, PageID# 332.)

(Doc. No. 74, PageID# 1003–06) (alterations in original) (footnotes omitted); *Sutton v. Penny Mac Loan Servs., LLC*, 2025 WL 342197, at *1–3 (alterations in original) (footnotes omitted).

### B. Procedural History

The Court described the lengthy procedural history of this action in the last report and recommendation (Doc. No. 74) and will not repeat the full history here.

The operative complaint in this action is Sutton's fourth amended complaint. (Doc. No. 30.) Sutton "accuse[s]" PennyMac, MERS, Bank of England, and Rubin Lublin "of Organized Collusion to Commit Mortgage Fraud by way of a false application, knowingly[ ] and purposefully constructing a false promissory note and deed; and filing a fraudulent lien in the County Register of Deeds office, conducting a fraudulent foreclosure, leading to a fraudulent eviction . . . ." (*Id.* at PageID# 529.) Sutton alleges that "BANK OF ENGLAND concealed a third party Securitizer as well as the terms of the Securitization Agreement . . . ." (*Id.* at PageID# 551.)

The specific legal claims enumerated in Sutton's fourth amended complaint include: (1) "fraud in the concealment"; (2) "unconscionable contract[s]"; (3) "breach of fiduciary duty"; (4) "intentional infliction of emotional distress"; (5) "slander of title"; (6) "fraud and deception on the court"; (7) "wrongful foreclosure"; and (8) "defective" "assignment of mortgage[.]" (*Id.* at PageID# 550, 553, 554, 556, 558, 564 (first brackets in original).) Sutton seeks declaratory relief, injunctive relief, and monetary damages. (Doc. No. 30.)

The Court has referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial matters under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 37.)

PennyMac and MERS filed a motion to dismiss Sutton's claims against them under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, Rule 12(b)(5) for insufficient service of process, and Rule 12(b)(6) for failure to state claims on which relief can be granted. (Doc. No. 34.) Sutton responded in opposition to PennyMac and MERS's motion to dismiss (Doc. No. 39), and PennyMac and MERS filed a reply (Doc. No. 40). Bank of England filed a motion to join PennyMac and MERS's motion to dismiss and Rubin Lublin filed a "Notice and Joinder in PennyMac" and MERS's motion, arguing that Sutton's claims against Bank of England and Rubin Lublin should be dismissed under Rules 12(b)(1) and 12(b)(6) for the reasons stated in PennyMac and MERS's supporting memorandum of law. (Doc. No. 41; Doc. No. 46, PageID# 697.)

The Magistrate Judge issued a report and recommendation recommending that the Court deny without prejudice Bank of England's motion to join and Rubin Lublin's notice of joinder for failure to comply with this Court's Local Rules and the District Judge's judicial preferences, which require parties "to file separate dispositive motions accompanied by supporting memorandums of law." (Doc. No. 74, PageID# 1013); *Sutton v. Penny Mac Loan Servs., LLC*, 2025 WL 342197, at *6. The Magistrate Judge also recommended that the Court grant in part PennyMac and MERS's motion to dismiss and dismiss Sutton's claims against PennyMac and MERS under Rule 12(b)(5) for insufficient service of process. (Doc. No. 74, PageID# 1020–25, 1028); *Sutton v. Penny Mac Loan Servs., LLC*, 2025 WL 342197, at *9–12, *14. None of the parties filed objections to the Magistrate Judge's report and recommendation within the time period provided by Rule 72(b)(2),

and the Court approved and adopted the report and recommendation on February 25, 2025.[1] (Doc. No. 79); *Sutton v. Penny Mac Loan Servs., LLC*, 2025 WL 611061, at *1.

On March 11, 2025, Rubin Lublin filed an answer (Doc. No. 82) to Sutton's fourth amended complaint and filed a motion to dismiss Sutton's claims against it under Rule 12(b)(6) or, in the alternative, for judgment on the pleadings under Rule 12(c) (Doc. No. 83). Sutton responded in opposition to Rubin Lublin's motion. (Doc. No. 90.) Rubin Lublin did not file an optional reply.

On March 25, 2025, Bank of England filed a motion to dismiss Sutton's claims against it under Rule 12(b)(6) for failure to state claims on which relief can be granted. (Doc. No. 91.) Sutton filed a response in opposition to Bank of England's motion (Doc. No. 94) and also filed an "equity affidavit" (Doc. No. 93, PageID# 1135), a "petition for immediate production of evidence" (*id.* at PageID# 1139), a "demand for accounting and records to be produced" (*id.* at PageID# 1145), and an "equity petition to compel account and fiduciary disclosure" (*id.* at PageID# 1150). Bank of England did not file an optional reply in support of its motion to dismiss.

## II.    Legal Standard

The same legal standard applies to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and motions for judgment on the pleadings under Rule 12(c). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 886 (M.D. Tenn. 2018). The Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle*

---

[1]    Sutton has since filed motions for reconsideration of the Court's order adopting the report and recommendation (Doc. Nos. 85, 87, 89) and a related motion to strike (Doc. No. 88) that are pending before the District Judge.

*Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*, 592 F.3d at 722 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Sutton appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## III.    Analysis

The Sixth Circuit has recognized that "the district courts in this circuit, particularly in Tennessee, have entertained a spate of civil actions that advance legal theories similar to" Sutton's.

*Thompson v. Bank of America, N.A.*, 773 F.3d 741, 748 (6th Cir. 2014). For example, in *Thompson*, the plaintiff "claim[ed] that because her mortgage note was immediately 'securitized' (sold to a pool of anonymous investors through a mortgage trust), [Bank of America] falsely induced her into signing the mortgage by pretending it was an actual lender." *Id.* at 746. Like Sutton, the plaintiff in *Thompson* alleged that "her title ha[d] become clouded on account of the transfer and securitization of the note." *Id.*

In *Thompson*, the Sixth Circuit addressed the plaintiff's "background argument that the securitization of [her] mortgage note altered [the plaintiff's] obligations under the note" and explained why the plaintiff's expectation that "she would have a traditional borrower/lender relationship with" the mortgage lender "w[as] not realistic under the express terms of the note and deed of trust and under the laws pertaining to negotiable instruments and securities." *Id.* at 749, 750. Among other things, the Sixth Circuit explained that "federal law provides for the creation of mortgage-related securities" and "[t]he pooling of mortgages into investment trusts is not some sort of illicit scheme that taints the underlying debt." *Id.* at 749 (first citing Securities Act of 1933, 15 U.S.C. §§ 77a–77aa; and then citing Secondary Mortgage Market Enhancement Act of 1984, 1984 Pub. L. 98–440, 98 Stat. 1689). The Sixth Circuit further explained that "securitization of a note does not alter the borrower's obligation to repay the loan" because "[s]ecuritization is a separate contract, distinct from the borrower's debt obligations under the note." *Id.*

With these background principles in mind, the Court addresses Rubin Lublin's and Bank of England's arguments in support of dismissal.

### A.    Rubin Lublin's Motion to Dismiss or For Judgment on the Pleadings

Rubin Lublin argues that it is entitled to dismissal under Rule 12(b)(6) or, alternatively, judgment on the pleadings under Rule 12(c) on Sutton's claims of intentional infliction of

emotional distress (IIED), fraud in the concealment, and any other claims against it in the fourth amended complaint. (Doc. No. 84.)

Because Rubin Lublin filed its dispositive motion (Doc. No. 83) after filing its answer (Doc. No. 82) to Sutton's fourth amended complaint, the Court should treat Rubin Lublin's motion as one for judgment on the pleadings under Rule 12(c). *See Satkowiak v. Bay Cnty. Sheriff's Dep't*, 47 F. App'x 376, 377 n.1 (6th Cir. 2002) (noting that defendant's "motion to dismiss under Rule 12(b)(6) should be labeled as a Rule 12(c) motion for judgment on the pleadings since the [defendant] had already filed an answer to the complaint").

### 1. IIED

To state a claim for IIED under Tennessee law, a plaintiff must allege that: "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff." *Lourcey v. Est. of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). In determining whether conduct is sufficiently outrageous, the Tennessee Supreme Court has

> emphasized that it is not sufficient that a defendant "has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." A plaintiff must in addition show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Id.* (first quoting *Bain*, 936 S.W.2d at 622; and then quoting *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999)). Tennessee courts have also held that "recovery for intentional infliction of emotional distress is limited to mental injury which is 'so severe that no reasonable [person] would be expected to endure it.'" *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003) (alteration in original) (quoting *Miller*, 8 S.W.3d at 615 n.4).

Rubin Lublin argues that Sutton has not plausibly alleged the second and third elements of an IIED claim, outrageous conduct and serious mental injury. (Doc. No. 84.) Rubin Lublin does not challenge Sutton's allegations that its conduct was intentional or reckless.

Sutton's fourth amended complaint alleges that "Rubin Lublin went forward with the foreclosure process" even though Sutton sent Rubin Lublin "evidence . . . that PennyMac did not own [the Suttons'] home." (Doc. No. 30, PageID# 540.) Specifically, Sutton alleges that he sent Rubin Lublin a copy of his original complaint in this action and a letter informing Rubin Lublin "that the foreclosure sale on the property . . . [was] highly suspect if not criminally fraudulent." (Doc. No. 18-1, PageID#328.) Sutton threatened to "pursue criminal prosecution against" Rubin Lublin if it continued to assist PennyMac in the foreclosure. (*Id.*) Sutton alleges that Rubin Lublin nevertheless "foreclosed on [Sutton's] property and started sending eviction letters and scar[ing] [Sutton's] elderly disabled parents." (Doc. No. 30, PageID# 540.) Rubin Lublin sent Sutton a letter demanding possession of the property and informing Sutton that he "must immediately vacate the premises and remove all personal property, or legal action [would] be taken against [him]." (Doc. No. 18-1, PageID# 341.) Sutton alleges that Rubin Lublin continued "working to evict" Sutton by helping PennyMac file an unlawful detainer action against the Suttons in state court. (Doc. No. 30, PageID# 540–41.) Sutton alleges that this conduct was "outrageous and extreme" for purposes of an IIED claim because Rubin Lublin was knowingly "aiding and abetting" PennyMac's "fraudulent[ ] foreclos[ure] on [Sutton's] property[.]" (*Id.* at PageID# 557.)

As Rubin Lublin points out, however, federal courts applying Tennessee law have found that similar conduct in the context of foreclosure sales does not give rise to the level of outrageousness necessary to support an IIED claim. *See Harris v. Wells Fargo*, Civ. No. 18-2400, 2019 WL 3779535, at *3 n.3, *6–7 (W.D. Tenn. Feb. 19, 2019) (finding plaintiff's allegations that

defendant "repeatedly sent her foreclosure sale notices, despite her attempts to comply with their demands to postpone foreclosure, refused to modify the mortgage, and informed her that the mortgage was not assumable in contravention of the Fair Housing Act" were not sufficiently outrageous to state a plausible IIED claim (citations omitted)); *Nooh v. CIT Grp. Consumer Fin., Inc.*, Civ. No. 17-2833, 2018 WL 3056698, at *7 (W.D. Tenn. Apr. 5, 2018) (finding plaintiff's "complaint fail[ed] to sufficiently allege that the defendants' actions were tortious or fraudulent, let alone outrageous" where IIED claim was "based on [plaintiff's] conclusory and implausible allegations that the defendants [did] not have standing to foreclose on the [p]roperty" at issue); *Sandlin v. Citibank, N.A.*, Civ. No. 15-2768, 2016 WL 4276287, at *1–2, *5–6 (W.D. Tenn. July 21, 2016) (finding plaintiff's allegations that defendants fraudulently foreclosed on his property were insufficiently outrageous to state an IIED claim); *Launius v. Wells Fargo Bank, N.A.*, No. 3:09-CV-501, 2010 WL 3429666, at *1–2, *4–5 (E.D. Tenn. Aug. 27, 2010) (finding allegations that bank and law firm defendants wrongfully foreclosed on plaintiff's home while plaintiff pursued loan modification to avoid foreclosure did not amount to outrageous conduct for purposes of IIED claim).

"The Tennessee Supreme Court has explained that '"[t]he general rule is that a creditor has a right to urge payment of a just debt, and to threaten to resort to proper legal procedure to enforce the obligation."'" *Johnson v. PennyMac Loan Servs., LLC*, Case No. 3:23-cv-00875, 2024 WL 2278343, at *8 (M.D. Tenn. May 20, 2024) (alteration in original) (quoting *Moorhead v. J.C. Penney Co.*, 555 S.W.2d 713, 718 (Tenn. 1977)), *report and recommendation adopted*, 2024 WL 2980792 (M.D. Tenn. June 13, 2024). However, "improper methods used to collect a debt may be the basis for the maintenance of an action for" IIED, including where a "creditor wil[l]fully and intentionally [seeks] to produce the mental or emotional disturbance in the debtor for the purpose

of forcing the latter to pay the debt, by sending coarse and vindictive letters, or by threatening to appeal to the debtor's employer." *Moorhead*, 555 S.w.2d at 718. Here, Sutton has not alleged sufficient facts to support an inference that Rubin Lublin's actions were improperly threatening or abusive. *See Childs v. HSBC Mortg. Servs., Inc.*, Civ. No. 3:10-cv-0242, 2010 WL 3063724, at *6 (M.D. Tenn. Aug. 3, 2010) (finding that, even if defendant's "actions were otherwise tortious, they [did] not rise to the level of outrageous . . . because they were not threatening or abusive" (citing *Nelson v. Ford Motor Credit Co.*, 621 S.W.2d 573, 576 (Tenn. Ct. App. 1981))). Sutton therefore has not plausibly alleged that Rubin Lublin's conduct was so outrageous that it cannot be tolerated by civilized society as required to satisfy the second element of an IIED claim.

Rubin Lublin is therefore entitled to judgment on the pleadings on Sutton's IIED claim.

### 2. Fraudulent Concealment

Tennessee law provides that "[t]he tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538–39 (Tenn. 1998); *see also Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003) (quoting *id.*). A duty to disclose can arise in three circumstances:

> (1) "[w]here there is a previous definite fiduciary relation between the parties," (2) "[w]here it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other," and (3) "[w]here the contract or transaction is intrinsically fiduciary and calls for perfect good faith."

*Shah*, 338 F.3d at 571 (alterations in original) (quoting *Domestic Sewing Mach. Co. v. Jackson*, 83 Tenn. 418, 425 (1885)). Federal Rule of Civil Procedure 9(b) "imposes a heightened pleading requirement for claims alleging fraud." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 884 (6th Cir. 2021); *see also Brown v. Woodbury Auto Grp. LLC*, 591 F. Supp.3d 282, 293 (M.D. Tenn. 2022) (finding that, "[a]lthough [plaintiff's fraudulent concealment] claims are governed by state law,

[p]laintiff's pleading must satisfy the 'particularity' requirement of Federal Rule of Civil Procedure 9(b)"). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "That means that parties bringing a fraudulent concealment claim 'must specify "the who, what, when, where, and how" of the alleged omission.'" *Smith*, 988 F.3d at 884 (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012)).

Sutton's fourth amended complaint alleges that Bank of England "conceal[ed] the securitization" of Sutton's mortgage loan and thereby "fail[ed] to disclose the true and material terms of the transaction[.]" (Doc. No. 30, PageID# 551, 552.) Sutton alleges "that the actions of . . . BANK OF ENGLAND [ ] ha[d] an adverse effect on the value of [Sutton's] . . . home by clouding the title." (*Id.* at PageID# 552.) Sutton also alleges that "[d]efendants were aware of the misrepresentation and profited from [it]" and that Bank of England, PennyMac, MERS, "and Rubin Lublin are guilty of malice, fraud and / or oppression." (*Id.*) In his response in opposition to Rubin Lublin's motion, Sutton alleges that Rubin Lublin "acted outside the capacity of neutral legal representation and participated directly in the enforcement and concealment of a fraudulent investment scheme."[2] (Doc. No. 90, PageID# 1113, ¶ 3.)

Even construed in the light most favorable to Sutton, these allegations are insufficient to state a plausible claim of fraudulent concealment against Rubin Lublin. Sutton has not alleged any facts that would allow the Court to draw a reasonable inference that Rubin Lublin owed Sutton a

---

[2] Because Sutton could move to amend his pleading to include this allegation, the Court may consider it in analyzing Rubin Lublin's motion to dismiss. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999) (holding that the district court should have "read all of [the pro se plaintiff's] filings together before dismissing [the] case"); *Harding v. Davidson Cnty. Sheriff's Office*, No. 3:13-cv-0449, 2013 WL 5774937, at *3 (M.D. Tenn. Oct. 25, 2013) (rejecting argument that "factual allegations made in [a pro se] plaintiff's response in opposition to [a] motion to dismiss" should not be considered in ruling on the motion to dismiss).

duty of disclosure with respect to the terms of his loan with Bank of England. Nor has Sutton specifically alleged the who, what, when, where, and how of any alleged omission by Rubin Lublin. Sutton's allegations therefore do not satisfy the heightened pleading requirements of Rule 9(b), and Rubin Lublin is entitled to judgment on the pleadings on Sutton's fraudulent concealment claim. *See Smith*, 988 F.3d at 884 (quoting *Republic Bank & Tr. Co.*, 683 F.3d at 256).

In his response in opposition to Rubin Lublin's motion, Sutton argues that Rubin Lublin engaged in fraudulent misrepresentation because it "falsely represented that PennyMac possessed ownership and authority to enforce a securitized debt that had already been sold to a trust." (Doc. No. 90, PageID# 1117, ¶ V.1.) In Tennessee, "courts consider 'fraud,' 'intentional misrepresentation,' and 'fraudulent misrepresentation' to be different names for the same cause of action." *Best Choice Roofing & Home Improvement, Inc. v. Best Choice Roofing Savannah, LLC*, 446 F. Supp. 3d 258, 275 (M.D. Tenn. 2020) (quoting *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012)). To state a claim for intentional misrepresentation, a plaintiff must allege six elements:

> "(1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation."

*Id.* (quoting *Hodge*, 382 S.W.3d at 343). Even if the Court considers Sutton's allegation that Rubin Lublin falsely represented the fact of PennyMac's ownership of the loan in analyzing Rubin Lublin's motion to dismiss, Sutton has not sufficiently alleged the remaining elements of an intentional misrepresentation claim. For example, Sutton has not alleged that he "'did not know that the representation was false when made'" as required to satisfy the fifth element. *Best Choice*

*Roofing & Home Improvement, Inc.*, 446 F. Supp. 3d at 275 (quoting *Hodge*, 382 S.W.3d at 343).

On the contrary, Sutton alleges that he disputed Rubin Lublin's representation by sending Rubin

Lublin "evidence . . . that PennyMac did not own [the Suttons'] home." (Doc. No. 30,

PageID# 540.) Sutton therefore has not stated a plausible claim of fraudulent misrepresentation

against Rubin Lublin.

### 3. Sutton's Remaining Claims Against Rubin Lublin

Rubin Lublin argues that none of the other claims in Sutton's fourth amended complaint

"mention [Rubin Lublin] in any respect, and most explicitly reference the other defendants." (Doc.

No. 84, PageID# 1077.) Specifically, Rubin Lublin argues that:

> the unconscionable contract claim references Bank of England, MERS, and
> Pennymac, *see* [Doc. 30] at pp. 26–27; the breach of fiduciary duty claim refers
> only to Bank of England, *id.* at pp. 27–29; slander of title speaks only of Bank of
> England and Pennymac, *id.* at pp. 31–33; declaratory relief asks to quiet title to the
> Property, but [Sutton] never alleges that [Rubin Lublin] claimed title in any respect,
> *id.* at pp. 33–34; fraud on the court mentions no defendant whatsoever, *id.* at p. 37;
> and wrongful foreclosure is only about Pennymac, *id.* at pp. 37–39.

(*Id.* (first brackets in original).) Rubin Lublin further argues that, "[w]hen a claim makes no

mention of a certain defendant" or "refers only generally to defendants without specifying which

one the plaintiff is referring to . . . [,]" it "violates the notice pleading requirements of

[Rule] 8(a)(2)" and "fails to state a claim against that [specific] defendant." (*Id.*) Sutton has not

responded directly to Rubin Lublin's argument.

"Basic pleading requirements dictate that a plaintiff must attribute factual allegations to

particular defendants" and "must allege each defendant's personal involvement with the alleged

violation of [the plaintiff's] rights." *Bailey v. Williams*, NO. 3:24-cv-00133, 2025 WL 864285, at

*3 (M.D. Tenn. Mar. 19, 2025) (Crenshaw, J.). Here, the only factual allegations Sutton makes

about Rubin Lublin's conduct relate to Rubin Lublin's representation of PennyMac in the

foreclosure proceedings. (Doc. Nos. 18-1, 30.) Sutton asserts a claim of "wrongful foreclosure"

15

against PennyMac (Doc. No. 30, PageID# 564) that the Court could liberally construe as a claim against Rubin Lublin, but doing so would be futile because the Tennessee Supreme Court has "decline[d] to recognize a common law cause of action for wrongful foreclosure in Tennessee." *Case v. Wilmington Tr., N.A.*, 703 S.W.3d 274, 292 (Tenn. 2024). With respect to Sutton's remaining causes of action—"unconscionable contract[s]"; "breach of fiduciary duty"; "slander of title"; "fraud and deception on the court"; and "defective" "assignment of mortgage" (Doc. No. 30, PageID# 553, 554, 558, 564)—Sutton has not "allege[d] with any degree of specificity" how Rubin Lublin is "responsible for each of the alleged violations of his [ ] rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002).

Rubin Lublin is therefore entitled to judgment on the pleadings on all claims asserted against it in Sutton's fourth amended complaint.

### B. Bank of England's Motion to Dismiss

Bank of England argues that, as best it can tell, Sutton's fourth amended complaint "specifically names [Bank of England] in relation to his claims of fraudulent concealment, unconscionable contracts, breach of fiduciary duty, and slander of title." (Doc. No. 92, PageID# 1125, n.2.) Bank of England argues that it is entitled to dismissal of these claims under Rule 12(b)(6) for Sutton's failure to state claims on which relief can be granted.

#### 1. Fraudulent Concealment & Breach of Fiduciary Duty

Under Tennessee law, claims of fraudulent concealment and breach of fiduciary duty require the alleged existence of a specific duty. As explained above, "[t]he tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Chrisman*, 978 S.W.2d at 538–39; *see also Shah*, 338 F.3d at 571 (quoting *id.*). A duty to disclose can arise in three circumstances:

(1) "[w]here there is a previous definite fiduciary relation between the parties," (2) "[w]here it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other," and (3) "[w]here the contract or transaction is intrinsically fiduciary and calls for perfect good faith."

*Shah*, 338 F.3d at 571 (alterations in original) (quoting *Domestic Sewing Mach. Co.*, 83 Tenn. at 425).

Similarly, to state a claim for breach of fiduciary duty under Tennessee law, a party must allege "(1) the existence of a fiduciary duty (2) that was breached (3) proximately causing damages." *Pagliara v. Johnston Barton Proctor & Rose, LLP*, 708 F.3d 813, 818 (6th Cir. 2013); *see also Welch v. United Network for Organ Sharing*, 767 F. Supp. 3d 746, 785 (M.D. Tenn. 2025) (Crenshaw, J.) (quoting *id.*). In Tennessee, "a fiduciary relationship may arise between two parties in any number of circumstances, both formal and informal, including 'whenever confidence is reposed by one party in another who exercises dominion and influence.'" *Pagliara*, 708 F.3d at 818 (quoting *Thompson v. Am. Gen. Life & Accident Ins. Co.*, 404 F. Supp. 2d 1023, 1028 (M.D. Tenn. 2005)). "'In the most general sense, a fiduciary duty is the duty to act with due regard for the interests of another,' requiring a fiduciary to '"exercise good faith and due diligence" in its dealings.'" *Welch*, 767 F. Supp. 3d at 785 (quoting *Pagliara*, 708 F.3d at 818). However, "[t]he precise contours of a duty are necessarily a matter of context." *Pagliara*, 708 F.3d at 818.

Here, Sutton alleges that Bank of England was the lender from which he borrowed his mortgage loan. (Doc. No. 30.) "Tennessee common law generally does not impose fiduciary or similar duties on banks with respect to their customers, depositors, or borrowers absent special circumstances." *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006) (first citing *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 550 (Tenn. 1996); and then citing *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank. Nat'l Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992)). "This rests on the recognition that bank-depositor or debtor-creditor relationships

17

generally involve arm's-length dealings." *Id.* Further, Tennessee Code Annotated "'§ 45-1-127 provides that financial institutions and their officers cannot be "deemed or implied to be acting as fiduciary or have a fiduciary obligation or responsibility to its customers or to other parties . . . unless there is a written agreement' to act in that capacity."'" *Ward v. Coleman-Ward*, Case No. 1:19-cv-01119, 2020 WL 13660319, at *5 (W.D. Tenn. May 29, 2020) (quoting *Foster Bus. Park, LLC v. Winfree*, No. M2006-02340-COA-R3-CV, 2009 WL 113242, at *8 (Tenn. Ct. App. Jan. 15, 2009)).

Sutton has not alleged the existence of any such written agreement here. He alleges only that the "[d]efendants knew or should have known that[,] through a consciousness of innocence[,] [Sutton] [was] at a special disadvantage" with respect to the terms of the mortgage loan. (Doc. No. 30, PageID# 554.) This conclusory allegation is not enough to support a reasonable inference that, under Tennessee law, Bank of England owed Sutton a duty to disclose or a fiduciary duty. Sutton's claims of fraudulent concealment and breach of fiduciary duty against Bank of England are therefore subject to dismissal for failure to state a claim.

Even if Sutton had alleged that Bank of England had a duty to disclose, his fraudulent concealment claim against Bank of England would still be subject to dismissal for failure to meet the requirements of Rule 9(b).[3] Sutton alleges that Bank of England "conceal[ed] the securitization" of Sutton's mortgage loan and thereby "fail[ed] to disclose the true and material terms of the transaction[.]" (Doc. No. 30, PageID# 551, 552.) He further alleges "that the actions of . . . BANK OF ENGLAND [ ] ha[d] an adverse effect on the value of [Sutton's] . . . home by

---

[3]     Bank of England has not argued that Sutton's breach of fiduciary duty claim rests on allegations of fraud such that the fraud allegations must satisfy Rule 9(b). *See In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp.2d 287, 311 (S.D. Ohio 2007) ("When a breach of fiduciary duty claim rests on averments of fraud, the allegations of fraudulent conduct must satisfy Rule 9(b)." (collecting authority)).

clouding the title." (*Id.* at PageID# 552.) Even construed in the light most favorable to Sutton, these allegations are insufficient to satisfy Rule 9(b)'s particularity requirements. Sutton has not specifically alleged the who, what, when, where, and how of any alleged omission by Bank of England. *See Smith*, 988 F.3d at 884 (quoting *Republic Bank & Tr. Co.*, 683 F.3d at 256).

## 2.    Unconscionable Contracts

Under Tennessee law, "'[u]nconscionability may arise from a lack of meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability).'" *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 503 (6th Cir. 2004) (quoting *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170–71 (Tenn. Ct. App. 2001), *abrogated on other grounds*, *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102 (Tenn. 2016)). Courts applying Tennessee law "'have tended to lump the two together . . .'" *id.* (quoting *Trinity Indus., Inc.*, 77 S.W.3d at 171), applying the rule that "[a] contract is unconscionable when the 'inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.'" *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 977 (6th Cir. 2007) (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)); *see also Pugh v. Lady Jane's Haircuts for Men Holding Co.*, 660 F. Supp. 3d 712, 727 (M.D. Tenn. 2023) (quoting *Haun*, 690 S.W.2d at 872).

Sutton's fourth amended complaint alleges that:

BANK OF ENGLAND failed to clarify in the terms of the mortgage loan contract[s] that BANK OF ENGLAND the purported lender on the contract[s] was not the party giving consideration for the purported loan: rather BANK OF ENGLAND concealed they were financially benefiting by bargaining with a third party to finance the loan via a wire funds transfer in order to fund the purported loan at the closing using a warehouse line of credit from BANK OF ENGLAND.

Defendants knew or should have known that through a consciousness of innocence the Plaintiff were at a special disadvantage when attempting to grant an alternate

means of collection via the Constructive Deed of Trust to MERS and on the servicers. PENNYMAC.

It is clear that Defendants intended to exploit the Plaintiffs special disadvantage and deny Plaintiffs their superior rights to subject property.

(Doc. No. 30, PageID# 554 (brackets in original).) These generic, conclusory allegations are not enough to support a reasonable inference that the inequality of Sutton and Bank of England's bargain was "'so manifest as to shock the judgment of a person of common sense'" and that "'the terms [were] so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.'" *Seawright*, 507 F.3d at 977 (quoting *Haun*, 690 S.W.2d at 872).

Bank of England is therefore entitled to dismissal of Sutton's unconscionable contracts claim.

### 3. Slander of Title

To state a claim of slander of title in Tennessee, a plaintiff must allege: "(1) that she has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss." *Thompson*, 773 F.3d at 754 (quoting *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999)).

Here, Sutton alleges that:

Defendants with malice concealed the personal property (payment and tangible) securitization table funded transaction to Plaintiffs asset backed certificates trust. that upon default of the personal property (payment and tangible) BANK OF ENGLAND AND PENNY MAC misrepresented a memorialization of a purported true sale of a purported underlying indebtedness deposit account payment and tangible eNote. and the paper tangible accommodated note "Transfer and Assignment of Note and Deed of Trust." After years of the closing date of the Trust.

(Doc. No. 30, PageID# 559.) Sutton further alleges that:

The act of recording the purported "Assignment of Deed of Trust" into the official records of the Macon County Recorder's Office is a communication to a third-party of false statement derogatory to plaintiffs['] title made with malice causing special damages to the plaintiffs['] claim of title.

(*Id.* at PageID# 560.) Sutton alleges that Bank of England and PennyMac's actions deprived Sutton of "a clear and marketable title" because "the chain of title regarding securitization . . . has not been disclosed by proper recording . . . ." (*Id.* at PageID# 559.)

The Sixth Circuit has held that slander of title claims are subject to dismissal for failure to state a claim where, as here, a plaintiff "merely allege[s] that the defendants clouded [his] title when they transferred [his] mortgage to securitize it." *Welch v. Decision One*, No. 12-2282, 2014 WL 13004385, at *1 (6th Cir. Dec. 30, 2014); *see also Gilliard v. JP Morgan Chase Bank, N.A.*, No. 3:12-CV-236, 2012 WL 6139922, at *5 (E.D. Tenn. Dec. 11, 2012) ("A lender and its successors have the right to record a deed of trust against real estate that is offered as security for the loan. Doing so does not create a cause of action for slander of title."). Even construing the fourth amended complaint in the light most favorable to Sutton, Sutton's allegations are too general and conclusory to state a plausible claim of slander of title. Bank of England is therefore entitled to dismissal of this claim.

### 4. Sutton's Remaining Claims Against Bank of England

Bank of England argues that, because "[s]everal references to [Bank of England in the fourth amended complaint] are perfunctory and are not tied to any particular factual allegations[,]" Bank of England "is not properly on notice for" any other claims asserted in Sutton's fourth amended complaint. (Doc. No. 92, PageID# 1131, 1132.) Sutton has not directly responded to this argument. With respect to Sutton's claims of IIED; "fraud and deception on the court"; "wrongful foreclosure"; and "defective" "assignment of mortgage" (Doc. No. 30, PageID# 556, 564, 571), Sutton has not "allege[d] with any degree of specificity" how Bank of England is "responsible for

each of the alleged violations of his [ ] rights." *Frazier*, 41 F. App'x at 764. To the extent Sutton alleges any of these causes of action against Bank of England, Bank of England is entitled to their dismissal.

### C. Sutton's Discovery Requests

Neither Rubin Lublin nor Bank of England has addressed Sutton's "petition for immediate production of evidence" (Doc. No. 93, PageID# 1139), "demand for accounting and records to be produced" (*id.* at PageID# 1145), and "equity petition to compel account and fiduciary disclosure" (*id.* at PageID# 1150). However, because Rubin Lublin and Bank of England have shown that they are entitled to judgment on the pleadings or dismissal of all of Sutton's remaining claims in this action, the Court should find moot Sutton's requests for discovery.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the Court GRANT Rubin Lublin's motion for judgment on the pleadings (Doc. No. 83), GRANT Bank of England's motion to dismiss (Doc. No. 91), and FIND MOOT Sutton's requests for discovery (Doc. No. 93).

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 7th day of July, 2025.

ALISTAIR E. NEWBERN
United States Magistrate Judge